UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL REID a/k/a WAYNE MARTIN,

                Claimant,

-against-

**AFFIFAVIT IN SUPPORT OF ORDER TO SHOW CAUSE**

DOCKET NO. 17-cv-05268

THE STATE OF NEW YORK,

                Defendant.

JAMES D. HENNING, being duly sworn, deposes and says:

1) I, JAMES D. HENNING, incoming counsel for Claimant MICHAEL REID a/k/a WAYNE MARTIN, respectfully move this court to issue an order vacating the retaining lien of NAPOLI SHKOLNIK, PLLC, outgoing counsel, and directing the turnover of the legal file of Claimant.

2) I am proceeding by order to show cause rather than by notice of motion because Claimant has been prejudiced, and continues to be prejudiced, by the inability of incoming counsel to adequately represent him in this matter. That is, incoming counsel has been unable to review the case file, in the possession of NAPOLI SHKOLNIK, PLLC, and therefore unable to meaningfully participate in the litigation of this matter.

3) I am requesting that this Court vacate the retaining lien and order turnover of the file because NAPOLI SHKOLNIK, PLLC, has been discharged for cause. "The retaining lien is extinguished only when the court, which controls the functioning of the lien, orders turnover

1

of the file in exchange for payment of the lawyer's fee or the posting of an adequate security therefore following a hearing." D'Ambrosio v. Racanelli, 129 A.D.3d 900, 902 (2015). "When the attorney has been discharged by the client, if 'the discharge is with cause, the attorney has no right to compensation or a retaining lien, notwithstanding the existence of a retainer agreement..." Allstate Ins. Co. v. Nandi, 258 F.Supp.2d 309, 311 (2003). "Courts typically find a discharge "for cause" where there has been a significant breach of legal duty." Id.

4) Previous attempts to settle this matter without judicial intervention have occurred as follows:

   a. On April 19, 2022, my investigator, Daniel Levine, personally appeared at the Manhattan offices of NAPOLI SHKOLNIK, PLLC, to serve a stop-work order and consent to change attorney form endorsed by Claimant on the firm.

   b. Mr. Levine was not permitted into the firm's offices but then served the materials by e-mail and overnight mail on April 20th.

   c. Also on April 20th, NAPOLI SHKOLNIK, PLLC-by Paul Napoli-responded that his firm had a retaining lien on Claimant's file in the amount of $17,047.70, and, that if a check for that amount was not sent to his firm by the close of business on that day, they would "appear in Court as well and describe it from [their] perspective" (notwithstanding the stop-work order).

   d. In addition, Mr. Napoli contacted Claimant to disparage the undersigned and implore Claimant to reconsider his decision to terminate his representation by NAPOLI SHKOLNIK, PLLC.

   e. I responded to Mr. Napoli that my office would reimburse any legitimate expenses paid and attributable to their work on Claimant's case but that it was imperative that

2

    we receive the file to prepare for impending appearances and avoid unnecessary prejudice to the client.

f. When my office received the accounting of the expenses NAPOLI SHKOLNIK, PLLC, claimed to have paid, over $15,000.00 (approximately 85%) of the expenses claimed over a 6-year timespan were for investigative work by John Lamont Ramsey of Liberty Investigations. Over $2,000.00 of these charges related to visits to Green Haven Correctional Facility by Mr. Ramsey to meet with unidentified "friends" of his. Although NAPOLI SHKOLNIK, PLLC-by Marie Napoli-have claimed that these were "paid expenses ... paid out of pocket," upon information and belief, Mr. Ramsey claims not to have been paid the full amount alleged by NAPOLI SHKOLNIK, PLLC. **See Exhibit A**, Napoli Shkolnik Claimed "Detailed Disbursement".

g. Furthermore, in addition to being a NAPOLI SHKOLNIK, PLLC, client at least as recently as October of 2019 (they have publicized their unsuccessful efforts to overturn his conviction for a 1981 Brooklyn homicide), Mr. Ramsey is not a licensed investigator and, therefore, cannot charge for investigative services. See, Shorten v. Milbank, 170 Misc. 905 (Sup. Ct. N.Y. Co. 1939) (an unlicensed private investigator cannot recover payment for services rendered); Joe O'Brien Investigations v. Zorn, 263 A.D.2d 812 (3d Dept. 1999)(same). Similarly, his partner at Liberty Investigations, Tanya Williams, is not a licensed investigator (and, in any event, none of the investigative work listed appears to have been performed by Ms. Williams).

h. When I informed Mr. Napoli that the expenses NAPOLI SHKOLNIK, PLLC, allegedly paid Mr. Ramsey for investigative work were not legitimately chargeable to

3

    Claimant, he responded that my "issue is with the 'investigator' not us." That is, he implied that I should take the matter up with his client.

i. On May 10, 2022, NAPOLI SHKOLNIK, PLLC, appeared-by Ellie Silverman-as his counsel during a status conference before this Court. In sum, the Court directed Ms. Silverman to provide files materials to expedite Claimant's case and submit a motion to withdraw as counsel.

j. On May 13, 2022, the undersigned e-mailed Ms. Silverman to inquire as to when she expected to submit a motion to withdraw and provide file materials as directed by the Court. Later on the 13th, Ms. Silverman responded that "[a]ssuming we are able to work out the partial-file transfer amicably" she would file her motions to withdraw immediately. Ms. Silverman asked what expenses my office would be covering and indicated that upon receipt of a check for said expenses, her office would send over the materials "as soon as is practicable." Also on the 13th, I responded to Ms. Silverman that my office was prepared to cover $2,040.79 of the expenses claimed by NAPOLI SHKOLNIK, PLLC.

k. On May 15, 2022, Ms. Silverman informed the undersigned by e-mail that she would no longer be working at NAPOLI SHKOLNIK, PLLC, and would not have access to any correspondence sent there, but that she would be filing a motion to withdraw the following day.

l. On May 16, 2022, the undersigned e-mailed Paul Napoli, who indicated that NAPOLI SHKOLNIK, PLLC, would copy Claimant's file, remove all materials from "[Mr.] Ramsey's *investigations*" (emphasis added), and transfer the file when a check for expenses cleared. As of this writing, this was Mr. Napoli's last contact with the

4

undersigned or anyone from my office. Mr. Napoli has ignored numerous e-mails and telephone calls from my colleagues and I concerning Claimant's file.

m. On May 23, 2022, my investigator reached out to Paul Napoli by phone and, after being told he was unavailable, e-mailed him once again. In response, NAPOLI SHKOLNIK, PLLC, by Marie Napoli, responded—in pertinent part—as follows:

"…Please provide our FULL costs if you want the work associated with the same. We are not providing the file and our work product without our full disbursements. That is our rights and the purpose of a retaining lien. We will not be responding to any further emails on this nonsense. If you can't afford to handle the case you should let Ramsey know rather than prejudicing his interests…"

n. As of this writing, NAPOLI SHKOLNIK, PLLC, has yet to provide us with Claimant's file. NAPOLI SHKOLNIK, PLLC, has not endorsed the consent to change attorney form my office served on them (instead providing their own in which they included additional terms).

5) Upon information and belief, the firm of NAPOLI SHKOLNIK, PLLC, has engaged in conduct that would support a finding that these attorneys have been discharged for cause. This includes the following:

a. Claimant was not informed that the attorney who—along with the undersigned—brought his case to NAPOLI SHKOLNIK, PLLC, in 2016 and handled it from then until the present, had left the firm and did not intend to continue to represent him.

b. Claimant was not informed that the trial prosecutor who withheld evidence at Claimant's criminal trial was dropped as a defendant in the companion case to the instant matter.

c. Claimant was not informed that a convicted murderer and NAPOLI SHKOLNIK, PLLC, client who is not a licensed investigator, was being used to communicate with

5

witnesses and conduct the bulk of—if not all—purported "investigative work" over a 6-year period in this case.

6) Claimant is being unfairly prejudiced by the conduct of his prior attorneys. My office is fully prepared to pay a legitimate retaining lien, but we do not believe that Claimant is liable for funds NAPOLI SHKOLNIK, PLLC, erroneously paid to their own client, who is not a licensed investigator, and much of which is unexplained or of dubious merit, or for any other expenses, as NAPOLI SHKOLNIK, PLLC, has been discharged for cause.

WHEREFORE, I respectfully request that the Court issue the above order, as well as such other relief as may be just and proper.

                                       Respectfully Submitted

                                       James D. Henning
                                       Law Offices of James Henning & Associates
                                       86 Livingston Street
                                       Brooklyn, NY 11201
                                       (908) 309-0435